**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JAMES WILLEY, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 Civ. 1397 (CM) |
| v. | ) ) | ECF CASE |
| J.P. MORGAN CHASE, N.A., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS COMPLAINT**

WILMER CUTLER PICKERING HALE
AND DORR LLP
Noah A. Levine
Alan E. Schoenfeld
399 Park Avenue
New York, New York 10022
Tel.: (212) 230-8800
Fax: (212) 230-8888
noah.levine@wilmerhale.com

# TABLE OF CONTENTS

STATEMENT ........................................................................................................................2

ARGUMENT .......................................................................................................................4

    I.    The FCRA Claims Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted. ...................................................................................................4

        A.  Plaintiff's FCRA Claims Are Barred By The Two-Year Statute Of Limitations. ............4

        B.  The Complaint Does Not Properly Allege Any Violation Of The Applicable FCRA Regulations On Banks' Disposal Of Consumer Information. ...........................................7

        C.  Plaintiff Fails To Allege Any Willful Violation Entitling Him To Statutory Damages, Or That He Suffered Any Cognizable Actual Damages. ........................................................9

            1.    Plaintiff does not allege any willful violation of the FCRA disposal regulations entitling him to statutory damages under § 1681n. .....................................................9

            2.    Plaintiff does not allege that he has suffered any cognizable actual damages sufficient to support a claim under § 1681o. ............................................................11

    II.   The State-Law Claims Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted. .................................................................................................13

        A.  The FCRA Preempts Plaintiff's State-Law Claims ........................................................14

        B.  Plaintiff's State-Law Claims Should Be Dismissed Because Plaintiff Has Not Alleged Cognizable Injury Sufficient To Maintain His Claims. ....................................................16

        C.  Most of Plaintiff's Common-Law And Statutory Claims Fail For Reasons Particular To Each Claim. ...................................................................................................................18

            1.    Negligence Per Se ...................................................................................................18

            2.    Breach of Implied Contract ....................................................................................19

            3.    Breach of Contract .................................................................................................19

            4.    GBL § 349 ...............................................................................................................20

            5.    Bailment .................................................................................................................21

CONCLUSION ..................................................................................................................22

**TABLE OF AUTHORITIES**

**CASES**

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431, 125 S. Ct. 1788 (2005)........................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007).......................................................4, 7, 10, 19

*Bell v. Acxiom*,
    No. 4:06CV485, 2006 WL 2850042 (E.D. Ark. Oct. 3, 2006)...............................13

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008)..............................................................4, 10, 19

*Casella v. Equifax Credit Information Services*,
    56 F.3d 469 (2d Cir. 1995)...............................................................10, 13

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
    580 F. Supp. 2d 273 (S.D.N.Y. 2008)..............................................12, 19

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998)............................................................6

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504, 112 S. Ct. 2608 (1992)....................................................14

*Cohen v. JP Morgan Chase & Co.*,
    498 F.3d 111 (2d Cir. 2007)...............................................................17, 21

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004)........................................................6

*Consumer Data Industry Association v. Swanson*,
    No. 07 Civ. 3376, 2007 WL 2219389 (D. Minn. July 30, 2007)...........................16

*Dubai Islamic Bank v. Citibank, N.A.*,
    126 F. Supp. 2d 659 (S.D.N.Y. 2000).......................................................19

*Ellish v. Airport Parking Co. of America, Inc.*,
    42 A.D.2d 174, 345 N.Y.S.2d 650 (N.Y. App. Div. 2d Dep't 1973),
    *aff'd*, 316 N.E.2d 882, 359 N.Y.S.2d 280 (N.Y. 1974) .........................................17

*Ezagui v. Dow Chemical Corp.*,
    598 F.2d 727 (2d Cir. 1979)................................................................17

*Fagan v. AmerisourceBergen Corp.*,
    356 F. Supp. 2d 198 (E.D.N.Y. 2004) ...................................................................18

*Farley v. Williams*,
    No. 02 Civ. 667, 2005 WL 3579060 (W.D.N.Y. Dec. 30, 2005) ...........................18

*Ferron v. RadioShack Corp.*,
    886 N.E.2d 286 (Ohio Ct. App. 2008) ..................................................................16

*First Investors Corp. v. Liberty Mutual Insurance Co.*,
    152 F.3d 162 (2d Cir. 1998) ..................................................................................17

*Forbes v. Wells Fargo Bank, N.A.*,
    420 F. Supp. 2d 1018 (D. Minn. 2006) .................................................................13

*Giordano v. Wachovia Securities, LLC*,
    No. 06-476, 2006 WL 2177036 (D.N.J. July 31, 2006) .........................................13

*Guin v. Brazos Higher Education Services Corp., Inc.*,
    No. Civ. 05-668, 2006 WL 288483 (D. Minn. Feb. 7, 2006) ................................12

*Hatfill v. Foster*,
    401 F. Supp. 2d 320 (S.D.N.Y. 2005), *rev'd on reconsideration on other grounds*,
    415 F. Supp. 2d 353 (S.D.N.Y. 2006) ...................................................................18

*Hendricks v. DSW Shoe Warehouse, Inc.*,
    444 F. Supp. 2d 775 (W.D. Mich. 2006) ..............................................................12

*Horowitz v. Stryker Corp.*,
    No. 07 Civ. 1572, 2009 WL 436406 (E.D.N.Y. Feb. 20, 2009) .............................21

*Howard v. Municipal Credit Union*,
    No. 05 Civ. 7488, 2008 WL 782760 (S.D.N.Y. Mar. 25, 2008) ...........................16

*In re Alper Holdings USA, Inc.*,
    398 B.R. 736 (S.D.N.Y. 2008) ...........................................................................2, 20

*In re Burbank Environmental Litigation*,
    42 F. Supp. 2d 976 (C.D. Cal. 1998) ......................................................................6

*In re Merrill Lynch Ltd. Partnerships Litigation*,
    154 F.3d 56 (2d Cir. 1998) ......................................................................................5

*In re Salomon Analyst Winstar Litigation*,
    No. 02 Civ. 6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) ..............................6

*Isaak v. Trumbull Savings & Loan Co.*,
169 F.3d 390 (6th Cir. 1999) ...............................................................6

*Jemzura v. Jemzura*,
36 N.Y.2d 496, 330 N.E.2d 414 (1975)................................................19

*Kahle v. Litton Loan Servicing LP*,
486 F. Supp. 2d 705 (S.D. Ohio 2007) ...............................................12

*Kennedy v. Chase Manhattan Bank USA, NA*,
369 F.3d 833 (5th Cir. 2004) ...............................................................9

*Key v. DSW, Inc.*,
454 F. Supp. 2d 684 (S.D. Ohio 2006) ...............................................13

*King v. Crossland Savings Bank*,
111 F.3d 251 (2d Cir. 1997)................................................................17

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*,
Nos. 01 Civ. 2946 & 01 Civ. 7670, 2004 WL 359138 (S.D.N.Y. Feb. 26, 2004)..................22

*Mason v. Chase Manhattan Bank USA, NA*,
194 F.3d 1313, 1999 WL 970280 (6th Cir. Oct. 15, 1999) ......................................9

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000)................................................................20

*Melancon v. Louisiana Office of Student Finance Assistance*,
567 F. Supp. 2d 873 (E.D. La. 2008)....................................12, 13, 17

*Pinero v. Jackson Hewitt Tax Service Inc.*,
594 F. Supp. 2d 710 (E.D. La. 2009) ...............................................12

*Pisciotta v. Old National Bancorp.*,
499 F.3d 629 (7th Cir. 2007) ...............................................12, 17, 18

*Ponder v. Pfizer, Inc.*,
522 F. Supp. 2d 793 (M.D. La. 2007)...............................................12

*Premium Mortgage Corp. v. Equifax Information Services, LLC*,
No. 07 Civ. 6349, 2008 WL 4507613 (W.D.N.Y. Sept. 30, 2008) .......................................16

*Randolph v. ING Life Insurance & Annuity Co.*,
486 F. Supp. 2d 1 (D.D.C. 2007)...............................................13

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)......................................................................2

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...............................................22

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47, 127 S. Ct. 2201 (2007)......................................................9

*Shafran v. Harley-Davidson, Inc.*,
    No. 07 Civ. 1365, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ...........12

*Shah v. Meeker*,
    435 F.3d 244 (2d Cir. 2006)....................................................................6

*TRW, Inc. v. Andrews*,
    534 U.S. 19, 122 S. Ct. 441 (2001).........................................................5

*Trikas v. Universal Card Services Corp.*,
    351 F. Supp. 2d 37 (E.D.N.Y. 2005) ...................................................11

*Valdez ex rel. Donely v. United States*,
    518 F.3d 173 (2d Cir. 2008)....................................................................5

*Washington v. CSC Credit Services, Inc.*,
    199 F.3d 263 (5th Cir. 2000) ...............................................................11

## STATUTES & RULES

12 C.F.R. § 41.83 ......................................................................................8

12 C.F.R. § 41.83(b) ..................................................................................8

12 C.F.R. pt 30, App. B ............................................................................8

15 U.S.C. § 1681a(f) ..................................................................................9

15 U.S.C. § 1681b......................................................................................9

15 U.S.C. § 1681n......................................................................................9

15 U.S.C. § 1681o..................................................................................9, 13

15 U.S.C. § 1681p..................................................................................5, 6

15 U.S.C. § 1681t (1994 Supp. I) ...............................................................15

15 U.S.C § 1681t(b)(1)(A) .........................................................................16

15 U.S.C. § 1681t(b)(5) ..............................................................................14

15 U.S.C § 1681t(b)(5)(A) ..........................................................................16

15 U.S.C § 1681t(b)(5)(I) ......................................................................14, 16

15 U.S.C. § 1681w ...........................................................................7, 8, 14, 16

15 U.S.C. § 1681w(a)(1) .............................................................................14

15 U.S.C. § 6805(a) .....................................................................................18

N.Y. Gen. Bus. Law § 349 .....................................................................20, 21

## OTHER AUTHORITIES

149 Cong. Rec. E2512 (2003)........................................................................5

149 Cong. Rec. H8121 (daily ed. Sept. 10, 2003) (Rep. Lucas)..................15

149 Cong. Rec. H8122 (daily ed. Sept. 10, 2003) (Rep. Kanjorski) ...........15

149 Cong. Rec. H12214 (daily ed. Nov. 21, 2003) (Rep. Oxley)................15

149 Cong. Rec. H12216 (daily ed. Nov. 21, 2003) (Rep. Baccus)..............15

149 Cong. Rec. H12217 (daily ed. Nov. 21, 2003) (Rep. Kelly) ...............15

149 Cong. Rec. S13849 (daily ed. Nov. 4, 2003) (Sen. Shelby) ................15

149 Cong. Rec. S13853 (daily ed. Nov. 4, 2003) (Sen. Dole).....................15

149 Cong. Rec. S13854 (daily ed. Nov. 4, 2003) (Sen. Johnson) ..............15

149 Cong. Rec. S13858 (daily ed. Nov. 4, 2003) (Sen. Reed) ...................15

149 Cong. Rec. S13887 (daily ed. Nov. 4, 2003) (Sen. Carper).................15

Fair and Accurate Credit Transactions Act, Pub. L. No. 108-159 (2003) ....7

H.R. Rep. No. 108-263 (2003)......................................................................15

S. Rep. No. 104-185 (1995) ........................................................................................................15

S. Rep. No. 108-166 (2003) ........................................................................................................15

On September 7, 2006, Chase Card Services[1] issued a press release announcing to the world that data tapes containing personal information of Chase-Circuit City credit card holders had been "mistakenly identified as trash," "thrown out," and "compacted, destroyed and buried in a landfill." Compl. ¶ 11. More than two years later, plaintiff James Willey, who does not explicitly claim to be one of those cardholders, initiated this lawsuit against Chase over the mistaken disposal and destruction of the data. Not surprisingly, given the circumstances of the data loss, plaintiff does not allege that anything has ever happened to him as a result of the incident. He does not say that his identity has been stolen or that his credit has been affected in any way. Plaintiff acknowledges that Chase had "strict procedures" for disposal of data tapes, and alleges that the data loss here resulted from a simple "human error." Compl. ¶ 14. Nevertheless, citing the fact of the loss and nothing more, plaintiff seeks substantial monetary damages on behalf of a putative cardholder class, asserting claims for willful and negligent violation of the Fair Credit Reporting Act ("FCRA"), as well as state common-law and statutory claims.

The Court should dismiss the complaint for failure to state a claim upon which relief can be granted. The FCRA claims are untimely, having been filed more than two years after plaintiff was put on inquiry notice of his claim by Chase's broad public notification of the data loss. The FCRA claims also lack merit. The complaint's only allegations of purportedly violative conduct (*e.g.*, Compl. ¶¶ 40, 57) rest on Federal Trade Commission regulations that do not even apply to Chase, and fail to make out any violation of the FCRA regulations that do govern banks' disposal of consumer information, much less a willful violation. Because plaintiff also cannot,

---

[1]     The complaint names "J.P. Morgan Chase, N.A." as defendant, but no such entity exists. Plaintiff may have intended to name JPMorgan Chase Bank, N.A., or to name some other entity. This brief refers to Chase Card Services as the issuer of the press release upon which nearly all of the complaint's factual allegations are based, and uses the shorthand "Chase" thereafter.

as a matter of law, allege any cognizable damages from the mere possibility that someone might somehow access the lost data from its compacted, destroyed state in the landfill, the complaint also fails to state a claim for a negligent FCRA violation. The complaint's state-law counts similarly lack merit. The same federal statute that plaintiff asserts against Chase, the FCRA, sets uniform national rules for disposal of consumer information and specifically and expressly preempts the imposition of any state-law requirement or prohibition respecting that subject. Finally, even if they were not preempted, the claims fail because of the absence of any cognizable injury—a point that the legion of courts to have considered such claims has uniformly held in the circumstances here—and due to specific shortcomings of various of the individual claims.

## STATEMENT

Plaintiff filed his complaint on February 17, 2009. The claims all derive from a single, accidental data loss. Compl. ¶ 14. Plaintiff relies on a September 7, 2006 Chase press release, and a September 8, 2006 *Computerworld* article, as the sole bases for his factual allegations regarding the data loss and the Chase response to it. *Id.* ¶¶ 11-14; Decl. of Noah A. Levine ("Levine Decl."), Exs. 1 & 2.[2] By reference and quotation to the press release and article, the complaint alleges that in July 2006, "computer tapes containing . . . personal information" for 2.6 million holders of the Circuit City-Chase Rewards Visa card "were mistakenly identified as trash and thrown out." Compl. ¶ 11. Plaintiff notes that Chase had "strict procedures" on the handling of data tapes but that, in this single instance, "the tapes were accidentally thrown away due to 'human error.'" *Id.* ¶ 14. Upon learning of the disposal, Chase worked "closely with federal and

---

[2]     "In deciding a motion to dismiss, this court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff . . . relied upon in bringing the suit." *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 748 (S.D.N.Y. 2008); *see also Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000).

local law enforcement," "conducted a thorough investigation," and concluded that the lost tapes were "contained within a locked box, . . . compacted, destroyed and . . . buried in a landfill where the trash was taken." *Id.* ¶ 11; Levine Decl., Ex. 1.  The Chase press release indicated that Chase monitored the accounts of the affected cardholders and "found no evidence that the tapes or their contents have been accessed or misused."  Levine Decl., Ex. 1.

The complaint notes that, after the data loss, Chase undertook to notify affected cardholders of the incident.  Compl. ¶ 13.  In doing so, Chase explained to them the steps it was taking to protect their personal information, offered one year of free credit monitoring to cardholders whose Social Security numbers were on the tapes, and encouraged all other affected cardholders to "contact one of the three national credit bureaus to place a free 90-day fraud alert on their personal file and request a copy of their credit report to help safeguard their information."  Levine Decl., Ex. 1.  Plaintiff denies that Chase contacted him as part of these efforts.  Compl. ¶¶ 4, 15.

The complaint asserts claims under the FCRA on the single, conclusory, allegation that Chase "deliberately," "recklessly," or "negligent[ly]" failed to "maintain reasonable procedures designed to protect against unauthorized access while disposing of" consumer information.  Compl. ¶¶ 40, 57.  Plaintiff apparently bases that allegation on the mere fact that a data loss occurred, as the complaint does not provide any more particularized bases for this assertion.  The state-law claims are based on similar conclusory allegations.  *See id.* ¶¶ 66, 73-74, 78-79, 85, 89, 96-97.  The complaint does not say that there ever has been any actual theft or improper use of the data on the Chase tapes, much less that any of plaintiff's data have been misappropriated or used.  Plaintiff alleges at most that, generally, "[t]here has been" an unidentified "spike in fraudulent activity resulting from the data breach." *Id.* ¶ 19.

**ARGUMENT**

*Standard.*   Dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) is proper where the complaint does not assert "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).   This standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."   *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (internal quotation marks and citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

I.      **The FCRA Claims Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.**

Plaintiff's FCRA claims should be dismissed for at least four reasons:  they are barred by the FCRA two-year statute of limitations (*infra*, Part I.A); they fail to allege any actual violation of the applicable FCRA disposal regulations in anything other than an impermissible, conclusory manner (*infra*, Part I.B); they fail to state a claim for any willful violation giving rise to statutory damages (*infra*, Part I.C.1); and they fail to allege any actual damages recoverable for a negligent violation (*infra*, Part I.C.2).

A.      **Plaintiff's FCRA Claims Are Barred By The Two-Year Statute Of Limitations.**

The FCRA statute of limitations requires a plaintiff to bring a claim "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such

liability occurs." 15 U.S.C. § 1681p. The two-year limitations period states a general discovery rule.[3] Under such a discovery rule, a claim accrues when "the plaintiff has or *with reasonable discovery should have discovered* the critical facts" that give rise to his cause of action. *Valdez ex rel. Donely v. United States.*, 518 F.3d 173, 177 (2d Cir. 2008) (emphasis added). A person is said to be on "inquiry notice" of a claim under the discovery rule when "a reasonable [person] of ordinary intelligence would have discovered the existence" of the relevant claim. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (internal quotation marks, citation, and alterations omitted). Section 1681p specifies that an FCRA cause of action accrues on the date of discovery of the violation at issue. The statute of limitations thus begins to run at the time the plaintiff first discovered, or with reasonable discovery should have discovered, the FCRA violation.

Plaintiff conspicuously avoids saying when he first discovered the Chase data-loss incident upon which his complaint is based, but the complaint's allegations and facts of which this Court can take judicial notice on this motion to dismiss demonstrate that plaintiff was on inquiry notice of the incident more than two years before he filed his complaint on February 17, 2009. The complaint itself alleges that two years and five months earlier, on September 7, 2006, Chase announced the incident to the world through a press release. *See* Compl. ¶ 11. At least twenty publications—including the *New York Times*, *Associated Press*, *Business Wire*, *Dow Jones Newswires*, and *Computerworld*—carried news stories in September 2006 reporting on the

---

[3] The Supreme Court held in *TRW, Inc. v. Andrews*, 534 U.S. 19, 28, 122 S. Ct. 441, 447 (2001), that the former version of the FCRA statute-of-limitations provision "implicitly excluded a general discovery rule." In response to that decision, Congress amended the statute in 2003 to expressly restate a discovery rule. *See* 149 Cong. Rec. E2512, E2514 (2003) ("This section extends the statute of limitations for violations of the Fair Credit Reporting Act. The section requires claims to be brought within 2 years of the discovery of the violation (instead of the original standard of 2 years after the date on which the violation occurred), but with an outside restriction that all claims must be brought within 5 years of when the violation occurred.").

data loss.  *See id.* ¶ 12 (referencing Computerworld article); Levine Decl., Ex. 3.[4]  The articles

described the data loss and Chase's efforts to contact cardholders, and even provided cardholders

with relevant Chase contact information.  *Id.*

As a matter of law, the fact of Chase's own public announcement, combined with the

widespread media attention, put affected cardholders on inquiry notice of any FCRA claims.

Applying a discovery rule, the Second Circuit has held that "[i]nformation contained in articles

in the . . . press may trigger the duty to investigate."  *Shah v. Meeker*, 435 F.3d 244, 249 (2d Cir.

2006).  Even a small number of articles—far smaller than the media attention here—has been

found to trigger a statute of limitations.  *See In re Salomon Analyst Winstar Litig.*, No. 02 Civ.

6171, 2006 WL 510526, at *4 & n.6 (S.D.N.Y. Feb. 28, 2006) (two articles, published one year

apart, triggered statute of limitations); *see also Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390,

400 (6th Cir. 1999) (inquiry notice triggered by "widespread newspaper reports" providing

"storm warnings" of "possible fraud"); *In re Burbank Envtl. Litig.*, 42 F. Supp. 2d 976, 981-82

(C.D. Cal. 1998) (plaintiffs had "reason to know" of claims due to "plethora of newspaper

articles and multiple newscasts," as well as prior litigation).  Here, based on the "substantial

media coverage" of the data-loss incident, *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.3

(S.D.N.Y. 1998), plaintiff was on inquiry notice as of September 2006.  His FCRA claims, filed

in February 2009, are therefore barred by § 1681p.

---

[4]      On a motion to dismiss under Rule 12(b)(6), the Court can take judicial notice of these
news items for the purpose of noting the widespread media coverage of the incident.  *See, e.g.*,
*Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004) ("not look[ing] to the substance of
the articles to resolve any disputed issue on defendant's motion, but . . . consider[ing] the fact of
the publication of these articles as evidence of the media frenzy").

**B.     The Complaint Does Not Properly Allege Any Violation Of The Applicable FCRA Regulations On Banks' Disposal Of Consumer Information.**

Plaintiff also fails to state a claim under the FCRA because the complaint includes no proper allegations of any violation of the applicable FCRA disposal regulations.  The sole basis set forth for Chase's alleged liability under the FCRA is the wholly conclusory allegation that Chase "deliberately," "recklessly," or "negligent[ly]" failed to maintain "reasonable procedures designed to protect against unauthorized access while disposing of" consumer information.  Compl. ¶¶ 40, 57.  This allegation does no more than recite, through the formulation and terminology of the FCRA regulations, the conclusion of purported liability.  Apart from simply saying that this single data loss occurred, plaintiff makes no allegations to support his legal conclusion.  He does not say what Chase's procedures were or why he claims they were unreasonable.  Indeed, the only thing the complaint does say on the subject contradicts his claim; plaintiff alleges that Chase had "strict procedures" on the handling of data tapes and that the loss here resulted from an "accidental[]" "human error."  Compl. ¶ 14.  Under *Twombly*, the complaint's mere "formulaic recitation of the elements of [his] cause of action" is plainly inadequate to state a claim for relief.  550 U.S. at 555, 127 S. Ct. at 1964-65.

To the extent that plaintiff's position is that the mere fact of the data loss establishes a violation of the FCRA regulations, the Court should reject that assertion.  Plaintiff brings his claims under 15 U.S.C. § 1681w, which Congress added to the FCRA in the 2003 Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. No. 108-159, § 216 (2003).  Section 1681w required the federal banking agencies, the National Credit Union Administration, and the Federal Trade Commission each to issue regulations requiring the entities under their respective jurisdictions to properly dispose of consumer information.  The Office of the Comptroller of the Currency (the regulator of national banks like Chase) together with the other federal banking

agencies complied with the congressional directive by requiring banks to "properly dispose of any consumer information . . . in accordance with the [existing] Interagency Guidelines Establishing Information Security Standards." 12 C.F.R. § 41.83(b).[5]

As intended, the Interagency Guidelines give content to the meaning of "properly dispose" in 12 C.F.R. § 41.83(b). The Guidelines do not impose the strict-liability regime that plaintiff's complaint apparently seeks to impose. Rather, they require banks flexibly to "implement a comprehensive written information security program that includes administrative, technical, and physical safeguards appropriate to the size and complexity of the bank and the nature and scope of its activities." 12 C.F.R. pt. 30, App. B, at II(A). The Guidelines are careful not to prescribe any particular form or content for an information security program. Instead, they require banks to design their own, suitable programs to meet general objectives, including "[e]nsur[ing] the proper disposal of customer information and consumer information." *Id.* at II(B)(4). In drafting the Guidelines, the federal banking agencies anticipated that the information security programs would not be foolproof, and therefore did not require them to be so. The Guidelines recognize that there will be incidents of data loss—or worse, unauthorized access to data—and require banks to have response programs in place for addressing such incidents. *Id.* at III(C)(1)(g); *id.*, Supp. A, at II. In short, the federal banking agencies require banks to properly dispose of consumer information by, in turn, developing and implementing appropriate information security programs. Plaintiff nowhere alleges that Chase failed to develop or

---

[5]     Plaintiff incorrectly bases his FCRA claims on the regulations that the Federal Trade Commission issued under § 1681w. Chase is a national bank, however, so the FTC regulations that the complaint relies upon do not apply to Chase. Rather, Chase's disposal practices are governed by the national banking agencies' regulations. *See* 12 C.F.R. § 41.83; *Interagency Guidelines Establishing Information Security Standards*, 12 C.F.R. pt. 30, App. B, I.A (scope).

implement such a program; to the contrary, the complaint alleges that Chase had strict procedures that failed here due to accidental human error. Compl. ¶ 14.[6]

### C. Plaintiff Fails To Allege Any Willful Violation Entitling Him To Statutory Damages, Or That He Suffered Any Cognizable Actual Damages.

The FCRA creates a private right of action for either willful or negligent violations of duties imposed by the statute. *See* 15 U.S.C. §§ 1681n (willful), 1681o (negligent). A successful plaintiff may recover actual damages for either violation and, in the case of willful violations only, statutory damages of between $100 and $1,000.

#### 1. Plaintiff does not allege any willful violation of the FCRA disposal regulations entitling him to statutory damages under § 1681n.

Plaintiff's claim for willful noncompliance should be dismissed for failure to state a claim. Just as the complaint's allegations of FCRA violations are conclusory, the allegations that those purported violations were *willful* are also conclusory, if not more so. To prevail on a claim for willful noncompliance under § 1681n(a), a plaintiff must show that the defendant knowingly violated or recklessly disregarded an FCRA requirement. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 2206 (2007). Here, the alleged FCRA violation is a purported failure to "maintain reasonable procedures designed to protect against unauthorized access while disposing of" consumer information. Compl. ¶ 40. Plaintiff's only allegation of willfulness is

---

[6] Plaintiff's complaint also appears in places to invoke as a ground for FCRA liability 15 U.S.C. § 1681b. *See* Compl. ¶¶ 23(b), 37, 41. Section 1681b enumerates the "permissible purposes" for which a "consumer reporting agency" may distribute consumer reports. But it is frivolous to claim that Chase is itself a "consumer reporting agency" (*i.e.*, a credit bureau). The FCRA defines that term to mean agencies that "regularly engage[] in whole or in part in the practice of assembling or evaluating consumer credit" in exchange for "monetary fees, dues, or on a cooperative nonprofit basis." 15 U.S.C. § 1681a(f). Numerous federal courts have rejected attempts to stretch the definition to cover Chase. *See Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 843 (5th Cir. 2004); *Mason v. Chase Manhattan Bank USA, NA*, 194 F.3d 1313, 1999 WL 970280, at *2 (6th Cir. Oct. 15, 1999) (table).

the wholly conclusory description of that asserted failure as having been undertaken "deliberately and/or recklessly." *Id.* *Twombly* holds that a plaintiff's obligation is to do more than formulaically recite "labels and conclusions" or "the elements of a cause of action." 550 U.S. at 555, 127 S. Ct. at 1964-65. That is especially true where the complaint's allegations themselves make the claim implausible. *See Boykin*, 521 F.3d at 213. That is the case here because the complaint affirmatively *undermines* any inference of Chase having deliberately or recklessly failed to maintain reasonable information security procedures. The complaint alleges that Chase *did* have "strict procedures" for the handling of data tapes, and that the data loss here was the result of "mistake[]" and "accident[]." Compl. ¶¶ 11, 14. In short, plaintiff's willful noncompliance claim should be dismissed because the complaint is "devoid of any evidence supporting a theory of willful noncompliance." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995).

Even if plaintiff's allegations were considered sufficient to demonstrate that *someone* recklessly handled consumer information, the complaint is inadequate to allege *Chase's* willful violation of the FCRA disposal regulations. The pertinent FCRA requirement is that of the Interagency Guidelines, which require banks to put in place appropriate information security programs. At most—on an unjustifiably generous reading of the complaint—plaintiff alleges that a single Chase employee recklessly handled the data tapes at issue. Yet that allegation does not support the inference that *Chase* knowingly or recklessly violated the Interagency Guidelines' requirement that the bank design and implement an appropriate information security program. Rather, it would serve to show only that Chase's program was not followed in the instance at issue. Indeed, that is precisely what the complaint itself says, alleging that Chase did

have strict procedures for data handling and that the data loss here was due to a single case of "human error"—"someone not following those specific procedures." Compl. ¶ 14.

## 2. Plaintiff does not allege that he has suffered any cognizable actual damages sufficient to support a claim under § 1681o.

Plaintiff alleges vaguely that he and the putative class members suffered actual damages in the form of "expenses for credit monitoring; anxiety; emotional distress, loss of privacy;" and other unidentified "economic and non-economic harm," Compl. ¶ 70, but courts considering complaints in data loss cases have held that these alleged harms are not cognizable damages supporting a valid theory of legal recovery. The important distinction in the law is between *data loss*, where (as the term implies) data is simply lost but not necessarily accessed, and *data breach*, where there has been unauthorized access to the data (*e.g.*, theft). This case concerns the former. The complaint alleges that the data tapes at issue were "identified as trash," "thrown out," and "compacted, destroyed and buried in a landfill." Compl. ¶ 11. The mere risk that plaintiff's data *may* be exposed to someone is not a cognizable harm under the FCRA: "the actionable harm the FCRA envisions is improper disclosure, not the mere *risk* of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made." *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 (5th Cir. 2000).[7]

Indeed, courts considering data loss claims brought under every sort of legal theory have uniformly rejected assertions of injury resulting from heightened anxiety, loss of privacy, or the speculative heightened risk of identity theft. The Seventh Circuit summarized the case law well in rejecting a plaintiff's attempt to plead a theory of recovery under Indiana law:

---

[7] *See also*, *e.g.*, *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 45 (E.D.N.Y. 2005) ("claiming private mental distress, without any showing that a creditor or other third party saw the . . . information or took any negative action towards the allegedly aggrieved party because of it" is insufficient to plead actual damages).

> Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy. Plaintiffs have not come forward with a single case or statute, from any jurisdiction, authorizing the kind of action they now ask this federal court, sitting in diversity, to recognize as a valid theory of recovery under Indiana law.

*Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 639-40 (7th Cir. 2007). A legion of decisions supports the court's conclusion. *See, e.g.*, *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 715 (E.D. La. 2009) (collecting cases dismissing claims for "damages associated with the speculative risk of identity theft"); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 282 (S.D.N.Y. 2008) (dismissing negligence claim because there was "no evidence that this plaintiff's data has been accessed or used by anyone as a result of the theft nor is there any evidence that the data of any similarly situated person has been accesses or used"); *Melancon v. Louisiana Office of Student Fin. Assistance*, 567 F. Supp. 2d 873, 877 (E.D. La. 2008) (dismissing plaintiff's claims because "the mere possibility that personal information may be at increased risk does not constitute actual injury sufficient to maintain a claim for negligence"); *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 1365, 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (granting motion to dismiss because "Plaintiff's alleged injuries are solely the result of a perceived and speculative risk of future injury that may never occur," and thus "Plaintiff has failed to show an actual resulting injury that might support a claim for damages"); *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d 793, 798 (M.D. La. 2007) (plaintiff did not suffer damage because he did not allege "that someone actually used the disclosed information to his detriment"); *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 712 (S.D. Ohio 2007) (plaintiff cannot recover when "no unauthorized use of her personal information has occurred"); *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 782 (W.D. Mich. 2006) (plaintiff cannot recover for "potential future loss which has not actually occurred"); *Guin v. Brazos*

*Higher Educ. Servs. Corp., Inc.*, No. Civ. 05-668, 2006 WL 288483 (D. Minn. Feb. 7, 2006) (granting summary judgment because no evidence of identity fraud or that plaintiff's information was accessed); *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018 (D. Minn. 2006) (plaintiff cannot recover for the "perceived risk of future harm").[8]

Plaintiff's assertions of economic injury fare no better. In data loss cases, courts have regularly "reject[ed] the theory that a plaintiff is entitled to reimbursement for credit monitoring services or for time and money spent monitoring his or her credit." *Randolph v. ING Life Ins. & Annuity Co*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) (citing cases); *see also Melancon*, 567 F. Supp. 2d at 875 n.5 (collecting data loss cases dismissing claims to recoup cost of credit monitoring). Even if such expenses were sufficient to establish actual damages, plaintiff nowhere alleges that he actually paid for such a service.

Plaintiff's claim under § 1681o accordingly should be dismissed. *See Casella*, 56 F.3d at 473 (affirming judgment in defendant's favor in FCRA case where plaintiff failed to demonstrate any "actual damages sustained").

## II. The State-Law Claims Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.

Plaintiff's state-law claims should be dismissed for at least three reasons: the FCRA expressly preempts them (*infra*, Part II.A), they fail to allege any cognizable harm (*infra*, Part II.B), and several fail to state a claim for reasons unique to the theory pled (*infra*, Part II.C).

---

[8] Several courts have held that similar allegations are insufficient even to establish Article III standing. *See Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1 (D.D.C. 2007); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684 (S.D. Ohio 2006); *Giordano v. Wachovia Sec., LLC*, No. 06-476, 2006 WL 2177036 (D.N.J. July 31, 2006); *Bell v. Acxiom*, No. 4:06CV485, 2006 WL 2850042 (E.D. Ark. Oct. 3, 2006).

### A. The FCRA Preempts Plaintiff's State-Law Claims

The FCRA includes an express preemption provision that states broadly that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to the conduct required by" nine specific provisions of the FCRA. 15 U.S.C. § 1681t(b)(5). One of the listed provisions is § 1681w. *See id.* § 1681t(b)(5)(I). The plain language of this section preempts *any* state-law claim respecting the conduct required by § 1681w. That is true whether the claim is based on a statute or state common law. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443, 125 S. Ct. 1788, 1798 (2005) ("[T]he term 'requirements' . . . reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties."); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521, 112 S. Ct. 2608, 2620 (1992) (plurality opinion) ("The phrase 'no requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law. . . .") (alteration incorporated); *id.* at 548-49, 112 S.Ct. at 2634 (opinion of Scalia, J., joined by Thomas, J.). Section 1681w and the regulations promulgated thereunder require covered entities like Chase to properly dispose of consumer information. *See id.* § 1681w(a)(1). Section 1681t(b)(5)(I) thus preempts any state-law claim that would impose a requirement or prohibition on Chase with respect to the proper disposal of consumer information.

The FCRA express preemption provision found in § 1681t(b) preempts more than just those state-law claims that would impose precisely the same duties as the specified FCRA provisions. The statute expressly preempts state laws "with respect to the conduct required by" a list of FCRA provisions, including § 1681w. Congress employed this and other broad formulations in § 1681t(b) to ensure that the FCRA would preempt all state-law standards in the designated areas, and not just those state-law standards that are inconsistent with the specific requirements of the FCRA. Section 1681t(b)

establishes the FCRA as the national uniform standard in these areas.  This section recognizes the fact that credit reporting and credit granting are, in many aspects, national in scope, and that a single set of Federal rules promotes operational efficiency for industry, and competitive prices for consumers.

S. Rep. No. 104-185, at 55 (1995).  Prior to its 1996 amendment, the FCRA already contained a provision preempting state-law obligations to the extent they were "inconsistent" with the Act.  15 U.S.C. 1681t (1994 Supp. I) (now codified at 15 U.S.C. § 1681t(a)).  Congress added § 1681t(b) to achieve even broader preemption with respect to the set of subject matters referred to in that section.  In 2003, the President signed into law FACTA, the legislative history of which makes indisputably clear that Congress intended section 1681t(b) to set uniform national standards in the statutorily-designated subject matters, which include responsibilities related to disposal of consumer information.[9]

No federal court has yet interpreted and applied § 1681t(b)(5)(I).  But courts have repeatedly noted that "[t]he preemptive reach of the FCRA is both broad and explicit,"

---

[9] See, e.g., S. Rep. No. 108-166, at 6 (2003) ("[T]he authors of the 1996 Amendments sought to establish uniform standards in key areas in an effort to enhance the development of national credit markets.  These measures include national standards for . . . furnisher responsibilities . . . ."); id. at 10 ("[T]he 1996 amendments contained various provisions which set forth uniform, national standards."); H.R. Rep. No. 108-263, at 24 (2003) ("In 1996, Congress amended the FCRA . . . to create a uniform national standard for consumer protections governing credit transactions."); 149 Cong. Rec. H12214 (daily ed. Nov. 21, 2003) ("the Fair Credit Reporting Act's uniform national standards . . . established in 1996") (Rep. Oxley); id. at H12216 (2003 Act "ensur[es] the continuity of our national uniform credit system") (Rep. Bachus); id. at H12217 ("national uniform credit reporting system") (Rep. Kelly); id. at S13849 (daily ed. Nov. 4, 2003) ("The committee bill incorporates many important reforms while creating permanent national standards.") (Sen. Shelby); id. at S13853 ("It is important that Congress act quickly to renew these uniform national standards for managing consumer credit information.") (Sen. Dole); id. at S13854 (2003 Act "permanently extends the preemption provisions to guarantee uniformity") (Sen. Johnson); id. at S13858 ("[u]niform national standards") (Sen. Reed); id. at S13887 ("the legislation before us today extends these uniform standards") (Sen. Carper); id. at H8121 (daily ed. Sept. 10, 2003) (2003 Act "reauthoriz[es] uniform national standards included in the [FCRA]") (Rep. Lucas); id. at H8122 ("the uniform system that preempts States from enacting miscellaneous and potentially conflicting requirements regarding credit reporting") (Rep. Kanjorski).

*Consumer Data Industry Ass'n v. Swanson*, No. 07 Civ. 3376, 2007 WL 2219389, at *4 (D. Minn. July 30, 2007), and, in interpreting § 1681t(b) more generally, have applied the express preemption provision broadly in various contexts to preempt state common-law and statutory claims. *See Premium Mortgage Corp. v. Equifax Info. Servs.*, LLC, No. 07 Civ. 6349, 2008 WL 4507613, at *3 (W.D.N.Y. Sept. 30, 2008) (deeming state-law statutory and tort claims preempted under § 1681t(b)(1)(A), regarding "prescreening"); *Howard v. Mun. Credit Union*, No. 05 Civ. 7488 (LAK), 2008 WL 782760, at *9 (S.D.N.Y. Mar. 25, 2008) (holding that "the FCRA expressly provides that a State may not impose its own requirements or prohibitions with respect to the subject matter regulated by 15 U.S.C. § 1681s-2, *i.e.*, relating to the responsibilities of persons who furnish information to consumer reporting agencies"); *Swanson*, 2007 WL 2219389, at *4 (deeming state-law claims preempted under § 1681t(b)(1)(A), regulating "prescreening"); *Ferron v. RadioShack Corp.*, 886 N.E.2d 286, 291 (Ohio Ct. App. 2008) (deeming state-law claims preempted under § 1681t(b)(5)(A), regulating truncation of credit-card numbers).

These decisions confirm the broad preemptive reach of § 1681t(b)(5)(I). All of plaintiff's state-law claims seek relief for the alleged violation of state-law requirements governing Chase's obligations with respect to disposal of consumer information. This is the precise subject matter regulated by § 1681w, so plaintiff's claims fall squarely within the preemptive ambit of § 1681t(b)(5)(I).

### B.   Plaintiff's State-Law Claims Should Be Dismissed Because Plaintiff Has Not Alleged Cognizable Injury Sufficient To Maintain His Claims.

Plaintiff's state-law claims should be dismissed for a second, independent reason: The only injuries that plaintiff claims to have suffered are insufficient to state a claim on any of the theories he has advanced in his complaint.

Plaintiff alleges that Chase's "acts in failing to notify consumers and failing to keep consumer information safeguarded occurred within the State of New York." Compl. ¶ 91. Accordingly, for purposes of this motion only, Chase considers plaintiff's state-law causes of action as arising under New York law. Each of the state-law causes of action pled in the complaint requires actual injury or damages as an element of the claim. *See King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (damages as element of negligence); *Ezagui v. Dow Chem. Corp.*, 598 F.2d 727, 733 (2d Cir. 1979) (injury element of negligence per se); *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (damages as element for contract breach); *Ellish v. Airport Parking Co. of Am., Inc.*, 42 A.D.2d 174, 176, 345 N.Y.S.2d 650, 653 (N.Y. App. Div. 2d Dep't 1973) ("bailment is . . . merely a special kind of contract"), *aff'd*, 316 N.E.2d 882, 359 N.Y.S.2d 280 (N.Y. 1974); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (injury as element of New York Gen. Bus. Law § 349 claim).

As discussed above in connection with plaintiff's FCRA claim (*supra*, Part I.C.2), courts considering similar data loss complaints throughout the country have rejected state-law claims where injury or damages are alleged based on heightened anxiety or economic loss in connection with the increased risk of identity theft. *See, e.g.*, *Pisciotta*, 499 F.3d at 639 (collecting cases dismissing state-law claims in data loss cases); *Melancon*, 567 F. Supp. 2d at 875 n.5 (collecting data loss cases dismissing claims to recoup credit monitoring costs). Federal courts should be particularly wary where, as here, plaintiff asks a federal court to recognize a state-law cause of action for an injury not before recognized under the governing state law. *See*, *e.g.*, *Pisciotta*, 499 F.3d at 639.

### C. Most of Plaintiff's Common-Law And Statutory Claims Fail For Reasons Particular To Each Claim.

#### 1. Negligence Per Se

Plaintiff's negligence per se claim fails because it is improper to allow recovery on this theory where it would permit a plaintiff to circumvent the purposeful remedial limitations on the underlying statute. Under New York law, a defendant is liable for negligence per se if the plaintiff establishes, *inter alia*, (1) that he or she is among the class of people for whose particular benefit a statute has been enacted; (2) that a private right of action would promote the legislative purpose behind the statute; and (3) that creation of the right would be consistent with the overall legislative scheme. *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 214 (E.D.N.Y. 2004). Plaintiff's negligence per se claim turns on Chase's alleged violations of § 1681w and the Gramm-Leach-Bliley Act ("GLBA"). To the extent plaintiff brings a negligence per se claim based on § 1681w, that claim is entirely redundant of his FCRA negligence claim, and should be dismissed as duplicative. *See Hatfill v. Foster*, 401 F. Supp. 2d 320, 344 (S.D.N.Y. 2005), *rev'd on reconsideration on other grounds*, 415 F. Supp. 2d 353 (S.D.N.Y. 2006).

The GLBA, which concerns data privacy, provides for enforcement of the statute and implementing regulations only "by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission." 15 U.S.C. § 6805(a). Relying on this provision, "[e]very case to have addressed the issue has held that the GLBA does not provide for a private right of action." *Farley v. Williams*, No. 02 Civ. 667, 2005 WL 3579060, at *3 (W.D.N.Y. Dec. 30, 2005). New York law on negligence per se does not permit a plaintiff to make an end-run around a carefully-crafted congressional scheme like the GLBA. Here, Congress demonstrated its view that a private right of action would not promote the GLBA's

purpose by expressly delegating enforcement of the statute to federal and state agencies alone. This Court should not, through the vehicle of negligence per se, provide the private right of action that Congress decided against.  *See Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000).

### 2.        Breach of Implied Contract

Plaintiff's breach-of-implied-contract claim fails under *Twombly*.  Plaintiff is obligated "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Boykin*, 521 F.3d at 213 (internal quotation marks and citation omitted).  Plaintiff's cause of action for breach of implied contract vaguely alleges that Chase "came into possession of Plaintiff's and Class Members' Confidential Information." Compl. ¶ 77, but does not say how an implied contract came into being through that act, or what any such implied contract required of Chase.  The complaint thus does not allege any "facts and circumstances . . . [concerning] the presumed intention of the parties as indicated by their conduct," from which an implied contract could be inferred.  *Jemzura v. Jemzura*, 36 N.Y.2d 496, 504, 330 N.E.2d 414, 420 (1975) (internal quotations and citations omitted).

### 3.        Breach of Contract

Plaintiff's contract claim fails because the actual contract contradicts the allegations of the complaint.  Plaintiff predicates his claim on the contract between Chase and Circuit City, and asserts that he "and the Class, who patronize Circuit City, are intended third-party beneficiaries of these contracts."  Compl. ¶ 83.  To succeed on a third-party beneficiary theory under New York law, plaintiff must establish that a valid contract between two other parties was intended for plaintiff's benefit, and that "the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost."  *Caudle*, 580 F. Supp. 2d at 282.  "While the third-party beneficiary does not

have to establish that it is explicitly mentioned in the contract, New York law requires that the parties' intent to benefit a third-party be shown on the face of the contract." *Id.*

The problem for plaintiff is that the Chase-Circuit City contract, on its face, expressly *disclaims* the creation of any rights on behalf of third parties: "this Agreement shall not create any rights on the part of any person or entity not a party hereto, whether as a third-party beneficiary or otherwise." Levine Decl., Ex. 4.[10] Accordingly, Plaintiff can have no claim as a third-party beneficiary to that contract.

### 4. GBL § 349

Neither of the violations that plaintiff alleges constitutes a "deceptive act" within the meaning of N.Y. Gen. Bus. Law § 349. Section 349 states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." A § 349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result. *See Cohen*, 498 F.3d at 126. The New York Court of Appeals has defined "deceptive acts" objectively as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).

The gravamen of plaintiff's § 349 claim is that Chase allegedly misled consumers by (1) failing to notify them of the data loss and any resulting compromise of their personal information, and (2) failing to notify customers that Chase "did not have adequate data security

---

[10] In deciding a motion to dismiss the court may consider documents that the plaintiff "knew about and relied upon in bringing the suit." *In re Alper Holdings USA, Inc*., 398 B.R. at 748. The complaint cites the Chase-Circuit City contract at ¶ 83. The Consumer Credit Card Program Agreement was signed by Circuit City Stores, Inc. and Bank One, Delaware, N.A. In 2004, Chase acquired Bank One, Delaware, N.A.

procedures in place to protect their personal information." Compl. ¶ 89. Chase's public announcement of the data loss and Chase's efforts to contact cardholders to offer them free credit monitoring simply does not comport with an allegation that its behavior was misleading in a material way. *See Cohen*, 498 F.3d at 126 (observing that public disclosure of an allegedly deceptive act normally forecloses a § 349 claim). Accepting plaintiff's allegations as true, there is no allegation that Chase did anything that would mislead a reasonable consumer. Likewise, Chase's alleged failure to notify customers that it "did not have adequate data security procedures in place to protect their personal information," Compl. ¶ 89, does not state a claim because it is contrary to the facts alleged in the complaint itself. As pleaded by plaintiff, this event arose out of an isolated failure to comply with existing internal securities procedures. Plaintiff does not dispute that these procedures were in place at Chase; he only alleges that, in this instance, they failed. It is not plausible to contend that Chase's failure to warn consumers about the unlikely event of a single, unforeseeable data-loss incident could be considered a deceptive act under § 349, and Chase is aware of no case so holding.

Finally, plaintiff does not allege any connection between Chase's alleged "deceptions" and any injury he purportedly suffered. *See, e.g.*, *Horowitz v. Stryker Corp.*, No. 07 Civ. 1572, 2009 WL 436406, at *12 (E.D.N.Y. Feb. 20, 2009) (dismissing § 349 claim where plaintiff pleaded "no connection between the defendants' deceptive conduct and a specific injury that she suffered as a result of that activity").

### 5.      Bailment

Finally, Chase is aware of no court that has endorsed plaintiff's distortion of bailment to reach his allegations. Under New York law, "a bailment is the delivery of personalty for some particular purpose . . . that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it,

as the case may be." *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, Nos. 01 Civ. 2946 & 01 Civ. 7670, 2004 WL 359138, at *5 (S.D.N.Y. Feb. 26, 2004) (internal quotation marks and citation omitted). Plaintiff's claim for bailment alleges that he "delivered and entrusted [his] Confidential Information to Defendant for the sole purpose of applying for credit and credit services." Compl. ¶ 95. The court in *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008), a data breach case, explained the implausibility of a bailment claim predicated on the transfer of personal information. Ruiz, a job applicant, claimed that the defendant prospective employer negligently permitted laptop computers containing unencrypted personal information of job applicants to be stolen. The court dismissed Ruiz's bailment claim for three reasons: (1) plaintiff alleged that the laptops were stolen, and thus "there [we]re no allegations of conversion or any other action by Gap that would indicate that Gap sought to unlawfully retain possession of Ruiz's social security number"; (2) the court was "hard pressed to conceive of how Ruiz's social security number could be construed to be personal property so that Ruiz somehow 'delivered' this property to Gap and then expected it to be returned"; and (3) Ruiz's "unorthodox" claim for bailment was duplicative of his negligence claim because it merely alleged that Gap was negligent in not securing the laptop. *Id.* at 1127. The same rationales all apply here. Plaintiff's bailment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed.

Dated:    April 24, 2009
       New York, New York

                                         Respectfully submitted,

                                         By:  /s/ Noah A. Levine
                                         Noah A. Levine
                                         Alan E. Schoenfeld
                                         WILMER CUTLER PICKERING HALE
                                            AND DORR LLP

399 Park Avenue
New York, New York 10022
Tel.:  (212) 230-8800
Fax:  (212) 230-8888
noah.levine@wilmerhale.com