**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES WILLEY, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) No. 09 Civ. 1397 (CM) |
| v. | ) ) ) ECF CASE |
| J.P. MORGAN CHASE, N.A., | ) ) |
| Defendant. | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS COMPLAINT</u>**

WILMER CUTLER PICKERING HALE
  and DORR LLP
Noah A. Levine
Alan E. Schoenfeld
399 Park Avenue
New York, New York 10022
Tel.: (212) 230-8800
Fax: (212) 230-8888
noah.levine@wilmerhale.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................................... ii

**I. Plaintiff's FCRA Claims Are Barred By The Statute Of Limitations And Otherwise Fail To State A Claim Upon Which Relief Can Be Granted** ......................................................1

    A. Plaintiff's FCRA Claims Are Time-Barred ........................................................1

    B. Plaintiff's Allegations Do Not State A Claim That Chase Violated The FCRA Regulations ..........................................................................................................2

    C. Because Plaintiff Has Not Alleged Any Cognizable Injury, His Complaint Fails To State A Claim For Negligent Violation Of The FCRA ...................................5

    D. Plaintiff Fails To State A Claim For Chase's Willful Violation Of The FCRA ..6

**II. Plaintiff's State-Law Claims Should Be Dismissed Because He Has Not Alleged Any Cognizable Injury And Because The Claims Are Preempted** .............................................7

    A. Plaintiff Fails To Allege A Cognizable Injury On His State-Law Claims .........7

    B. The FCRA Express Preemption Provision Bars Plaintiff's State-Law Claims ..8

    C. Plaintiff's State-Law Claims Fail For Claim-Specific Reasons .........................9

# TABLE OF AUTHORITIES

## CASES

*Aliano v. Texas Roadhouse Holdings LLC*,
 No. 07 Civ. 4108, 2008 WL 5397510 (N.D. Ill. Dec. 23, 2008) ........................................5

*Ashcroft v. Iqbal*,
 No. 07-1015, 2009 WL 1361536 (May 18, 2009) ......................................................3, 4, 6

*Bell Atl. Corp. v. Twombly*,
 127 S.Ct. 1955, 550 U.S. 544 (2007)..................................................................3, 4, 6, 10

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
 580 F. Supp. 2d 273 (S.D.N.Y. 2008)................................................................................10

*Cohen v. JP Morgan Chase & Co.*,
 498 F.3d 111 (2d Cir. 2007)..............................................................................................10

*Ferron v. RadioShack Corp.*,
 886 N.E.2d 286 (Ohio Ct. App. 2008) .................................................................................8

*Grancio v. De Vecchio*,
 572 F. Supp. 2d 299 (E.D.N.Y. 2008) .................................................................................1

*In re Merrill Lynch Ltd. P'ships Litig.*,
 154 F.3d 56 (2d Cir. 1998)..................................................................................................2

*In re Moody's Corp. Sec. Litig.*,
 599 F. Supp. 2d 493 (S.D.N.Y. 2009)..................................................................................2

*In re U.S. Wireless Data, Inc.*,
 547 F.3d 484 (2d Cir. 2008)................................................................................................1

*Killingsworth v. HSBC Bank Nev., N.A.*,
 507 F.3d 614 (7th Cir. 2007) ..............................................................................................6

*LC Capital Partners v. Frontier Ins. Group*,
 318 F.3d 148 (2d Cir. 2003)................................................................................................2

*Leysoto v. Mama Mia I., Inc.*,
 255 F.R.D. 693 (S.D. Fla. 2009)..........................................................................................6

*Neely v. Pension Trust Fund*,
 No. 00 Civ. 2013, 2003 WL 21143087 (E.D.N.Y. Jan. 16, 2003).....................................10

*Pisciotta v. Old Nat'l Bancorp*,
   499 F.3d 629 (7th Cir. 2007) ............................................................................................7

*Randolph v. ING Life Ins. & Annuity Co.*,
   486 F. Supp. 2d 1 (D.D.C. 2007) .....................................................................................5

*Trikas v. Universal Card Servs. Corp.*,
   351 F. Supp. 2d 37 (E.D.N.Y. 2005) ................................................................................5

*Washington v. CSC Credit Servs.*,
   199 F.3d 263 (5th Cir. 2000) ............................................................................................5

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
   530 F. Supp. 2d 486 (S.D.N.Y. 2007)..........................................................................1, 2

## STATUTES AND REGULATIONS

15 U.S.C. § 1681n..................................................................................................................8

15 U.S.C. § 1681o..................................................................................................................8

15 U.S.C. § 1681t(b)..........................................................................................................8, 9

15 U.S.C. § 1681w...........................................................................................................3, 8, 9

12 C.F.R. pt. 30, App. B ........................................................................................................9

In the more than two years since Chase announced the data loss at issue here, *nothing* apparently has happened to plaintiff. His belated complaint does not allege a single concrete injury. Indeed, it alleges nothing more than the fact that the data loss occurred. The FCRA claims are untimely and the complaint's allegations fail to state claims under the FCRA or state law.

## I. Plaintiff's FCRA Claims Are Barred By The Statute Of Limitations And Otherwise Fail To State A Claim Upon Which Relief Can Be Granted

### A. Plaintiff's FCRA Claims Are Time-Barred

Plaintiff acknowledges that the FCRA statute of limitations provides for a discovery rule, and that Congress specifically tied the limitations period to the discovery of the "violation." Plaintiff's Opposition ("Opp.") at 3. Under a discovery rule, the statute of limitations begins to run when the plaintiff either did discover (actual notice) or should have discovered (inquiry notice) the relevant event (here, the alleged violation). *See, e.g.*, *In re U.S. Wireless Data, Inc.*, 547 F.3d 484, 494 (2d Cir. 2008) (applying inquiry notice rule in bankruptcy case); *Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 307-08 (E.D.N.Y. 2008) (addressing inquiry notice in FTCA case); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 525 (S.D.N.Y. 2007) (applying inquiry notice in RICO case).[1]

This is a paradigmatic case of inquiry notice: Chase did not conceal the data loss in any way. Rather, it announced the incident to the whole world in a very public way—through a press

---

[1] The Securities Act is not to the contrary. While that statute is more explicit in stating that the limitations period begins to run on the date the plaintiff should have discovered the relevant event (there, the "omission" or "misstatement"), there is no dispute that the FCRA states such a rule. All of the Securities Act cases are, accordingly, relevant. Indeed, courts in this District have applied Securities Act cases regarding the discovery rule outside the securities context. *See, e.g.*, *World Wrestling*, 530 F. Supp. 2d at 527-28 (relying on securities cases for analysis of discovery rule in RICO case).

release that was, as intended, picked up by numerous publications of national scope. Chase also sent millions of individual notices to affected persons. Under the discovery rule, plaintiff should have known of the alleged violation for which he sues by September 2006. Courts have repeatedly held that press coverage far less widespread than in this case is sufficient to commence a limitations period under a discovery rule. *See* Mem. in Support of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 5-6; *see also LC Capital Partners v. Frontier Ins. Group*, 318 F.3d 148, 155 (2d Cir. 2003) (affirming dismissal because one press article and one lawsuit triggered inquiry notice); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 505 (S.D.N.Y. 2009) ("In this District, as little as one news article is enough" to trigger inquiry notice).

Plaintiff should hardly be heard to argue that the wave of press is insufficient to have put him on inquiry notice as a legal matter. The only basis for the allegations in his own complaint is the September 2006 press account of Chase's data loss—specifically, the Chase press release and an article one day later from the national publication *ComputerWorld*. Plaintiff does not allege that he came to know of the loss in any other way. And although plaintiff claims this ground must be resolved later as a question of fact, courts regularly dismiss complaints under Rule 12(b)(6) on this ground. *See World Wrestling*, 530 F. Supp. 2d at 528 (observing that Second Circuit has granted motions to dismiss in "a vast number of cases" where inquiry notice was at issue); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) ("We have held that the question of inquiry notice need not be left to a finder of fact.").

### B. Plaintiff's Allegations Do Not State A Claim That Chase Violated The FCRA Regulations

Plaintiff makes the solitary allegation that Chase inadvertently disposed of the data tapes. From that, he asks the Court to infer that Chase did not have reasonable procedures to protect his personal data, and therefore to find Chase liable for violating FCRA regulations. For the reasons

explained in Chase's opening brief, that allegation is legally insufficient to make out a claim for violation of the FCRA.[2]  Def.'s Mem. at 7-9.  The FCRA regulations governing Chase do not contemplate strict liability for data loss; rather, they expressly acknowledge the inevitability of data loss.  *Id*.  Merely alleging that such a loss occurred is deficient *as a matter of law* to make out a violation of the regulations.  The complaint's defect is not that it cited the wrong regulations; the defect is that plaintiff's theory is legally insufficient.

Plaintiff attempts to take shelter in what he reads as Rule 8's forgiving pleading requirements, arguing that the "plausibility" standard described in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 550 U.S. 544 (2007), is inapplicable here.  But, as the Supreme Court's recent decision in *Ashcroft v. Iqbal*, No. 07-1015, 2009 WL 1361536 (May 18, 2009), makes clear, plaintiff's reading of *Twombly* and Rule 8 is wrong and misstates the burden for surviving a motion to dismiss.  *First*, the pleading requirements articulated in *Twombly* apply to all civil actions.  *Iqbal*, 2009 WL 1361536, at *16 ("Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. . . .  Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'").  *Second*, *Iqbal* makes clear that Rule 8 "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at *12.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to] unlock the doors of discovery . . . ."  *Id.* at *13.

Yet this is all that plaintiff's complaint contains.  He recites the bare elements of a cause of action under § 1681w as allegations and, by virtue only of the fact that a data loss occurred,

---

[2]  Plaintiff does not, nor could he, dispute that it is the banking agencies' regulations that apply here, as JPMorgan Chase Bank, N.A. is a national bank regulated by the OCC.  *See* FDIC Institution Directory, *available at* http://www2.fdic.gov/IDASP/main.asp.

asserts the conclusion that Chase must have violated the requirements imposed by regulations promulgated under that section. That is insufficient. Moreover, his complaint then goes on to undermine, rather than support, his theory that Chase lacked the reasonable data-security procedures required by the Interagency Guidelines. The complaint alleges *both* that Chase had strict procedures *and* that the data loss here resulted from mistake and human error. In his opposition, plaintiff disputes the first of these only: He says that he does not *allege* that Chase had strict procedures but, rather, that his complaint merely "provides a quote" from a Chase employee. Opp. at 8. The distinction is meaningless, given that *all* of plaintiff's allegations are based on Chase's own representations in its press release. Plaintiff cannot have his cake and eat it, too. Yet plaintiff wants just that; later in his brief, he specifically asserts that one of his state-law claims is adequately pled precisely because, he says, he has alleged that Chase had strict procedures. *Id*. at 15.

Insofar as plaintiff claims that his complaint should be read liberally because it would be impossible to make the required allegations in this case prior to discovery, *Iqbal* forecloses that argument. Plaintiff's complaint does not state a sufficiently plausible claim that it should "unlock the doors of discovery." Under plaintiff's view, any company's announcement of a data loss, standing alone, is grounds for a class-action complaint and discovery. The whole point of *Twombly*—and *Iqbal*—is that conclusory allegations are an insufficient basis to proceed to discovery. In the more than two and a half years since the data loss, the only allegations that plaintiff has adduced to support his claims are those drawn from Chase's press release and a news article.

### C. Because Plaintiff Has Not Alleged Any Cognizable Injury, His Complaint Fails To State A Claim For Negligent Violation Of The FCRA

Plaintiff does not allege that he has ever been injured in any way cognizable under the FCRA. Plaintiff tries to distinguish Chase's authorities by characterizing them all as about state common-law causes of action, and drawing a distinction between the FCRA and state common law, but he is wrong. The FCRA cases—including those cited in Chase's opening brief and to which plaintiff offers no response, *see* Def.'s Mem. at 11—stand for the same proposition as the state-law cases: That is, there must be some concrete FCRA injury (*e.g.*, actual dissemination of a false credit report or disclosure to a third party of private information) for a plaintiff to recover damages for emotional distress or anxiety. The FCRA does not allow recovery for such damages when they are merely associated with the risk of future disclosure. The "actionable harm the FCRA envisions is improper disclosure, not the mere *risk* of improper disclosure." *Washington v. CSC Credit Servs.*, 199 F.3d 263, 267 (5th Cir. 2000).[3]

Plaintiff's authorities are not to the contrary. In each, there was a concrete FCRA injury—the actual dissemination of a false credit report. *See* Opp. at 9-10 (citing cases). The dispute in those cases was merely over whether the non-economic harms alleged could serve to help quantify the damages to be awarded.[4]

---

[3] *See also Aliano v. Texas Roadhouse Holdings LLC*, No. 07 Civ. 4108, 2008 WL 5397510, at *3 (N.D. Ill. Dec. 23, 2008) ("Numerous district courts have also determined that private information security law claims under the FCRA . . . are not viable absent some actual loss of information or identity."); *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 45 (E.D.N.Y. 2005) ("actual damages" under the FCRA must include some disclosure of private information or some sort of "negative action" against plaintiff).

[4] Plaintiff insists that he has suffered "economic damages." Opp. at 10. But he does not allege that he has expended any money on credit monitoring. *See Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) (dismissing claim for reimbursement of credit-monitoring expenses because "[p]laintiffs do not specifically allege which, if any, of them have actually purchased and paid for credit monitoring services, or which services those individuals have purchased and paid for").

### D. Plaintiff Fails To State A Claim For Chase's Willful Violation Of The FCRA

Plaintiff's opposition confirms what his complaint already makes clear—that his sole allegation of willfulness is the perfunctory insertion of the words "deliberately and/or recklessly" before the assertion of the FCRA violation. Opp. at 8. There are no factual allegations to support that wholly conclusory assertion. It is not sufficient for plaintiff to allege willfulness in that cursory fashion now, and then seek to substantiate it with actual support later. (The one case plaintiff cites for the proposition that willfulness may be averred generally does not support that proposition. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 623-24 (7th Cir. 2007) (detailing plaintiffs' allegations of willfulness).)

*Twombly* and *Iqbal* require plaintiff to allege *something* to support his serious allegation that Chase, cognizant of its legal obligations under the FCRA, *willfully* violated those obligations nonetheless. In *Twombly*, the Supreme Court concluded that the complaint "did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior." *Iqbal*, 2009 WL 1361536, at *13 (discussing *Twombly*). Likewise here, plaintiff's allegations do not show (much less plausibly show) that Chase willfully disposed of the data tapes. Indeed, on plaintiff's own rendering of the facts, this one-time data loss was the result of inadvertence, not a knowing and purposeful violation of Chase's obligations under the FCRA.[5] In any event, even on an unjustifiably generous reading of the complaint, plaintiff's allegations show only that a single employee

---

[5] Plaintiff's failure to include any factual contentions in support of his conclusory accusation of willful noncompliance is a serious matter, given the statutory damages available to victims of willful violations of the statute. Courts considering putative class action FCRA challenges like this one have noted that class treatment of such claims "would permit potentially annihilating statutory damages to be awarded against a defendant business, without any requirement or proof of actual harm." *Leysoto v. Mama Mia I., Inc.* 255 F.R.D. 693, 698 (S.D. Fla. 2009) (collecting cases).

deviated from strict Chase policies. This does not show that *Chase* willfully violated the FCRA (Def.'s Mem. at 11), a point so clear that plaintiff does not even respond to it in his opposition.

## II. Plaintiff's State-Law Claims Should Be Dismissed Because He Has Not Alleged Any Cognizable Injury And Because The Claims Are Preempted

### A. Plaintiff Fails To Allege A Cognizable Injury On His State-Law Claims

All of plaintiff's state-law claims should be dismissed—just as many cases before plaintiff's have been—because each requires damages as an element, Def.'s Mem. at 17, and plaintiff has not alleged any. This ground is clear, especially in light of plaintiff's opposition.

Plaintiff's cursory treatment of the absence of cognizable damages supporting his state-law claims follows an untenable logic. First, he argues with respect to his FCRA claim that Chase's authorities addressing the cognizable-harm requirement do not apply because they are all state-law cases, and the FCRA purportedly treats the issue differently. Then, he contends with respect to his state-law claims (in a footnote), that his prior argument as to the damages cognizable under the FCRA applies with equal force to his state-law claims. Opp. at 10 n.1. This is tantamount to a concession. Chase cited the litany of cases nationwide holding that the sort of injuries plaintiff alleges here—entirely speculative emotional injuries stemming from the risk of potential identity theft—are insufficient to state a claim under state tort, contract, and statutory laws. Def.'s Mem. at 11-13. Indeed, reflecting on many of the same authorities, the Seventh Circuit held that it was unaware of "a single case or statute, from any jurisdiction, authorizing the kind of action" that plaintiff brings here for the increased risk of future identity theft, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007). In response, plaintiff identifies none.

The cases are clear, substantial in number, and consistent. Plaintiff has no response because there is none. All his state-law claims should be dismissed on this ground alone.

### B. The FCRA Express Preemption Provision Bars Plaintiff's State-Law Claims

The FCRA contains a broad, express preemption provision directed specifically at the FCRA disposal provision on which plaintiff bases his FCRA claims. This preemption provision is not an exception to some general anti-preemption rule in the FCRA, as plaintiff asserts. Rather, the FCRA has different, express preemption provisions applying to different subjects. As to § 1681w, preemption is comprehensive ("with respect to"),[6] thus implementing Congress' judgment that the credit system works best when governed by an efficient, uniform set of rules, rather than potentially fifty different sets of rules, whether under subject-specific statutes or common-law theories of negligence. *See* Def.'s Mem. at 14-15 & n.9.

Plaintiff's argument is that § 1681w imposes requirements only on federal agencies, so the § 1681t(b)(5)(I) preemption provision only bars state-law requirements that federal banking agencies promulgate disposal regulations. That argument is untenable. States cannot require federal agencies to do anything, so under plaintiff's reading, § 1681t(b)(5)(I) would have no effect or purpose at all. More importantly, if plaintiff's reading were correct, it would in fact require the dismissal of his FCRA claims. The FCRA private right of action provisions under which plaintiff brings his claims use language that is virtually identical to the preemption provision. They prescribe liability only in the event that a person willfully or negligently "fails to comply with any requirement imposed under this subchapter." §§ 1681n, 1681o. Under plaintiff's view, the only requirements imposed by § 1681w are on federal banking agencies. Opp. at 11. If that is so, all §§ 1681n, 1681o, and 1681t(b)(5) refer to, then the only FCRA claim

---

[6] Plaintiff suggests in a footnote that the preemption cases Chase cites are inapplicable because they deal with § 1681t(b)(1). Opp. at 12 n.2. But plaintiff ignores Chase's citation to *Ferron v. RadioShack Corp.*, 886 N.E.2d 286 (Ohio Ct. App. 2008), which addressed § 1681t(b)(5), and held that the provision "evidences a broad preemptive purpose and expresses its intent that [FCRA provisions identified in § 1681t(b)(5)] preempt any state law imposing a requirement or prohibition concerning the conduct [those provisions] require[]." *Id.* at 291.

that plaintiff could bring with respect to § 1681w would be one against the federal banking agencies for failure to promulgate regulations. Under plaintiff's reading, Chase could not have violated the § 1681w requirements. In an effort to save his state-law claims from preemption, plaintiff necessarily must sacrifice his FCRA claims. He cannot have it both ways.

The better reading is that § 1681t(b)(5)(I) preempts state-law obligations or requirements broadly "with respect to the conduct" required by § 1681w, meaning the conduct required by the regulations promulgated thereunder.[7] The federal banking agencies' regulations apply to financial institutions' safeguarding and disposal of consumer information, as well as require notice to consumers in certain instances when such information is lost or breached. 12 C.F.R. pt. 30, App. B, at II(A), III(B)(4), & III(C)(1)(g). Plaintiff's claims seek to impose requirements and prohibitions with respect to these same subjects—Chase's safeguarding and disposal of consumer information, and Chase's duty to notify consumers. *See* Def.'s Mem. at 14. Respectfully, plaintiff's suggestion otherwise is wrong.[8]

### C. Plaintiff's State-Law Claims Fail For Claim-Specific Reasons

Briefly, plaintiff's negligence per se claim fails because a private right of action to enforce the GLBA is directly contrary to the legislative purpose behind the statute, which is to

---

[7] The word "specific" in § 1681t(b)(5), by its placement before the word "provisions," means that preemption is meant to apply only to the conduct required by the specifically listed provisions (which include § 1681w), not that preemption is somehow limited or narrow under each of subdivisions (A) through (I).

[8] As to the contract claims, Chase acknowledges that a properly pled claim seeking to advance an obligation actually found within a contract would not be preempted. Here, at best that would be third-party-beneficiary claim (which should be dismissed for its own reasons). As to the implied-contract claim, though, all that plaintiff asserts is that because plaintiff gave personal information to Chase, the law (state law) should imply an obligation on Chase to safeguard it and dispose of it properly. That is indistinguishable from invoking state law to impose a freestanding obligation on all contracting parties to safeguard and properly dispose of consumer information, and is therefore preempted.

ensure the uniformity of data-privacy regulations, and is therefore inconsistent with the overall legislative scheme. *See* Def.'s Mem. at 17. His negligence per se claim based on the FCRA should be dismissed as duplicative. This approach is not, as plaintiff suggests, limited to any one set of claims. *See, e.g.*, *Neely v. Pension Trust Fund*, No. 00 Civ. 2013, 2003 WL 21143087, at *12 (E.D.N.Y. Jan. 16, 2003) (dismissing duplicative statutory claims under ERISA).

Both the breach-of-contract and breach-of-implied-contract claims fail under *Twombly*. Merely pleading that Chase "came into possession," Compl. ¶ 77, of plaintiff's information, and that Chase has procedures for handling such information does not establish that any contract existed between Chase and plaintiff as to maintenance of that information. Likewise, plaintiff has not alleged any fact supporting the notion that the contract between Chase and Circuit City inured to his "sufficiently immediate" benefit with respect to any data-security measures taken by Chase. *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 284 (S.D.N.Y. 2008).

As to the GBL § 349 claim, it is legally untenable to argue, as plaintiff evidently does, that Chase had an obligation to disclose to its customers that its data-security procedures—which according to the complaint have failed once—were inadequate. *See* Def.'s Mem. at 21. To the extent plaintiff's GBL claim turns on Chase's alleged failure to notify plaintiff that his data was lost, the claim must be rejected. Broad public disclosure of an allegedly deceptive act forecloses a § 349 claim. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007).

Finally, there is no precedent to support plaintiff's claim that the doctrine of bailment protects the "delivery" of plaintiff's personal information to Chase. The only on-point authority rejects it. Def.'s Mem. at 22.

Dated: May 27, 2009
New York, New York

                                        Respectfully submitted,

                                        By: /s/ Noah A. Levine
                                        Noah A. Levine
                                        Alan E. Schoenfeld
                                        WILMER CUTLER PICKERING HALE
                                             and DORR LLP
                                        399 Park Avenue
                                        New York, New York 10022
                                        Tel.: (212) 230-8800
                                        Fax: (212) 230-8888
                                        noah.levine@wilmerhale.com